UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHERMANIE REED,<br><br>   Plaintiff,<br><br>v.<br><br>TROY LAWRENCE, JR., in his personal capacity, CITY OF BATON ROUGE, and PARISH OF EAST BATON ROUGE.<br><br>   Defendants. | No. 21-CV-624 |

**COMPLAINT**

Plaintiff SHERMANIE REED, by her undersigned attorney, for her complaint against Defendants, alleges as follows:

**INTRODUCTION**

1. This case involves a Baton Rouge police officer—one boasting a lengthy record of professional misconduct during his short career[1]—who, in his own words, "brought dishonor and disgrace upon himself and the department" on October 31, 2020.

---

[1] Off. Lawrence appears to have begun working for BRPD in 2019. Off. Lawrence's repeated profane threats to beat a handcuffed detainee ("I will fuck you up! I will fuck you clean up!") on January 1, 2020 made national news, *see* CBS Evening News, *Louisiana Officers Strip Search Teen and Enter Home Without Warrant*, May 27, 2021, available online at https://tinyurl.com/dxj556zm, and as part of a related incident (involving an illegal strip-search of a child and warrantless search of a home), a federal judge suggested he violated Louisiana criminal law. *See United States v. Green*, No. 20-00046-BAJ-SDJ, Dkt. 35 (M.D.La. 12/29/20). He also fired "several rounds" at a Baton Rouge citizen's dog in August 2020, but thankfully he has bad aim, and all of the bullets missed. He crashed one police car into a utility pole in November 2020 and slammed a different car into a civilian in December 2020; both traffic incidents were investigated by "Street Crimes Unit" colleagues who participated, alongside Lawrence, in the strip-search / warrantless home invasion incident of January 1, 2020.

2.     That evening, Shermanie Reed had the misfortune of encountering Officer Lawrence, Jr., when an unhinged Off. Lawrence reported to the scene of a traffic accident. He promptly turned off his body-worn camera's audio, began profanely cursing at all parties, and refused to issue the women a police report.

3.     Less than three minutes of arriving on the scene, without any provocation, Off. Lawrence transformed the incident into a physical altercation, grabbing Ms. Reed's arms with both hands and shoving her backward.

4.     This initial violence was a warm-up. Minutes later, in direct response to Ms. Reed (accurately) informing Off. Lawrence that his behavior was unprofessional, he violently arrested her. According to Off. Lawrence's own self-serving account, he:

A. Deactivated off his body-worn camera audio "to gain somewhat compliance"

B. Cursed at Ms. Reed, telling her "you must think you are grown" and "go get your fucking license."

C. Grabbed Ms. Reed's wrist and forcibly pulled her from her car, because she "was still babbling off [and] I just felt the need to maybe detain her and put her in my unit . . . I felt I was being too nice with her."

D. Locked Ms. Reed in the back of his police car.

E. Released Ms. Reed, but only after her step-father pleaded for her release, reasoning that the "father could calm and control [Ms. Reed, a 26-year-old woman] better than I could."

F. Expressly threatened Ms. Reed: "Next time I won't be so nice."

  G. "[B]rought dishonor and disgrace upon himself and the department."

(Ms. Reed's version of events, corroborated by the other independent witnesses who were interviewed by BRPD Internal Affairs and the video recording, is much worse.)

  5. Ms. Reed went to a local hospital for medical treatment for knee injuries she suffered when Off. Lawrence dragged her out of the vehicle. She still has medical debt from this care.

  6. The day after the incident, Ms. Reed had the courage to file a formal sworn complaint. She had never been arrested before and was profoundly disturbed by what she experienced. The complaint read in part:

> *No one should be treated the way I was. I was treated like an animal. I am requesting Troy Lawrence, Jr. be terminated. He is a part of the problem and contributes with the stigma towards police officers. I was assaulted, cursed out, and disrespected for no reason. The behavior of Troy Lawrence Jr. is unacceptable and will only continue with officers like him. Furthermore, I am requesting charges be pressed against him for assaulting me.*

  6. Off. Lawrence eventually received a slap on the wrist (a "Letter of Reprimand") for violating BRPD's "command of temper," "conduct unbecoming of an officer," and "digital mobile video/audio equipment" policies, all of which he admitted to violating. But when his behavior was evaluated by BRPD's top brass, including BRPD Chief Murphy Paul himself, the policymaker reached a disturbing and reprehensible conclusion: Off. Lawrence's behavior was *consistent* with BRPD's "Use of Force" policy.

  7. Officer Troy Lawrence, Jr. is the son of Deputy Chief Troy Lawrence, Sr., and was originally assigned to the "Street Crimes Unit" overseen by his father, then-Sgt. Troy Lawrence, Sr. In a press conference in May 2021, addressing *other* misconduct also committed by Troy Lawrence, Jr., Chief Paul stated that he made all disciplinary decisions together with his deputy chiefs. Shortly before his promotion to Deputy Chief, then-Sgt. Troy Lawrence Sr.

3

defended his unit's "aggressive" reputation while sporting a "Thin Blue Line Flag" on his uniform for a Fox television program (shown below).



## JURISDICTION AND VENUE

8.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution, as well as the deprivation of rights under Louisiana law.

9.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b), because the defendants resides in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

10.   Plaintiff SHERAMIE REED is a citizen of the United States and resides in the City of Baton Rouge.

11. Defendant TROY LAWRENCE, JR. is a resident of Louisiana and employed by the Baton Rouge Police Department. He works for Defendants CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE. Defendant CITY OF BATON ROUGE is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of EAST BATON ROUGE PARISH. Defendant PARISH OF EAST BATON ROUGE is a political subdivision of the State of Louisiana. The Parish's governing authority is consolidated with the government of the CITY OF BATON ROUGE.

12. Although not a named defendant, BRPD CHIEF MURPHY PAUL is the final policymaker for the municipal defendants as it pertains to official policy governing use of force by Baton Rouge Police Department employees.

## PLAINTIFF'S FACTUAL ALLEGATIONS

12. On October 31, 2020, there was a traffic accident involving two cars in the area of 3400 Harding Blvd., Baton Rouge, Louisiana. One of the cars ("Car 1") was driven by Shermanie Reed's sister.

13. Off. Lawrence was dispatched to the scene of the accident at the request of the parties involved.

14. Off. Lawrence was irritated and frustrated when he arrived on scene.

15. Off. Lawrence turned off the audio on his body-worn camera immediately shortly after exiting his patrol car. In later investigations, he gave conflicting explanations for why he did so, including that he did so "to gain somewhat compliance" and "because he didn't want his camera to record what he felt like he needed to tell [the women] at that point."

15. The driver of Car 1 asked Off. Lawrence to take a police report, but Off. Lawrence refused to do so, telling the drivers of Car 1 and Car 2 that he would not do so

"because the damage was not bad enough" and the total damage did not exceed $2,000. He further told the women was not going to give them a report "Because I can do that. I don't have to give you shit."

16.  Off. Lawrence's behavior became increasingly aggressive, and he told everyone: "I need everyone to shut the fuck up" and "I'm not about to do this shit with y'all." He also told the women, "Now y'all handle this shit on y'all own."

17.  Less than three minutes after arriving on the scene, Off. Lawrence began pointing at Ms. Reed and aggressively moved toward her. He placed both hands on her arms and shoved her backwards. There was no provocation or justification for touching Ms. Reed.

18.  When Ms. Reed informed him that he was acting inappropriately, Off. Lawrence responded to Ms. Reed's criticism by saying "Shut the fuck up" and "Shut the fuck up and go get your motherfucking ass in the car."

19.  After the traffic incident had concluded, with the drivers of Car 1 and Car 2 exchanging insurance information and taking pictures of one another's cars (though Off. Lawrence still refusing to issue an accident report), Off. Lawrence continued addressing Ms. Reed in a profane way.

21.  When Ms. Reed approached her sister, Off. Lawrence stated, "Get the fuck back in the car." He further stated, "You know what, since you think you're grown, give me your fucking ID."

22.  Ms. Reed returned to the driver's seat of the car. She fumbled to get her license from her wallet. Off. Lawrence continued to threaten her, telling her to "Hurry the fuck up." When Ms. Reed explained that she was having difficulty removing it from her wallet and that she thought his language was unprofessional, Off. Lawrence replied, "Shut the fuck up."

22. Off. Lawrence then reached into the car, grabbed Ms. Reed's left wrist with both hands, and yanked her from the driver's seat by her wrist. He then forcibly placed Ms. Reed against the car while he handcuffed her wrists behind her back.

23. As Off. Lawrence dragged Ms. Reed from the car, Ms. Reed banged her knee, sustaining injuries requiring medical treatment at a local hospital.

23. When asked later why he arrested Ms. Reed, Off. Lawrence stated: "I felt I was being too nice with her. . . . [S]he came to the scene after the wreck occurred which she shouldn't have done. Upon me asking get your driver's license and she was still babbling off, I just felt the need to maybe detain her and put her in my unit."

23. Ms. Reed did not resist arrest or in any way provoke Off. Lawrence's violent actions, either when he initially placed hands on her approximately six minutes earlier, or when he dragged her from the car.

24. While pulling Ms. Reed from the car and placing her in handcuffs, Off. Lawrence reiterated that Ms. Reed must "think she's grown" and additionally stated, "I'ma show you" and "You better not have no fucking outstanding warrants."

25. As Ms. Reed's family members pleaded that Off. Lawrence's actions were unnecessary, he responded: "She going to jail. I ain't got time for this fucking shit."

26. Off. Lawrence arrested Ms. Reed and confined her in the back of his Baton Rouge Police Department vehicle.

27. Ms. Reed's step-father pleaded for Ms. Reed's freedom.

28. Off. Lawrence eventually agreed to release Ms. Reed to her step-father. In a report, he subsequently explained, "I spoke with [Ms. Reed's] father whom [sic] was already on scene. . . . It was my best judgment that [Ms. Reed's] father could calm and control [Ms. Reed]

7

better than I could. I counseled and advised him to further instruct his daughter on how to obey lawful orders when given."

29. When he released Ms. Reed from the police car, he stated: "Get your ass out of the car."

30. Off. Lawrence's report states that he "then counseled [Ms. Reed] further on the importance of obeying lawful orders and the consequences of not doing so." Off. Lawrence clarified this euphemistic language in his Internal Affairs investigation interview, where he admitted that his "counseling" consisted of the threat: "Next time I won't be so nice."

31. Off. Lawrence never completed a Use of Force Report related to the incident.

31. Later that evening, Ms. Reed was reeling emotionally from what transpired. She was unable to leave her home, and cried involuntarily when recalling the way in which she was manhandled and falsely imprisoned by Off. Lawrence.

32. Ms. Reed also suffered physical injuries, including significant pain in her knee due to Off. Lawrence's actions. She sought medical care at Baton Rouge General Hospital where her leg was immobilized and placed in a brace.

33. She continues to have outstanding medical debts today from this treatment.

34. Ms. Reed filed an official complaint with BRPD concerning Off. Lawrence's conduct, requesting that he be criminally charged with assault.

**BATON ROUGE'S RATIFICATION OF OFF. LAWRENCE'S USE OF FORCE**

36. On November 1, 2020, BRPD Chief Murphy Paul personally received Ms. Reed's complaint.

36. Internal Affairs conducted a thorough investigation, which included a review of body-worn camera footage, an interview with Off. Lawrence, and interviews with multiple

civilian witnesses (including at least one witness from Car 2, who corroborated Ms. Reed's account).

38. Baton Rouge Police Department Chief Murphy Paul then personally reviewed the investigation materials to consider whether Off. Lawrence's conduct violated BRPD's "use of force" policy. He ratified the conduct as appropriate under BRPD'S policies governing the use of force.

38. Chief Paul initially decided to suspend Off. Lawrence for *other* rule violations (i.e., intentionally turning off the audio of his body-worn camera, unprofessionally using profanity, etc.), but upon receiving an apology letter directed to *him*, he changed his mind. He altered Off. Lawrence's suspension to a written reprimand.

39. In communications with Ms. Reed telling her that her complaint had been "sustained" against Off. Lawrence—which, to be clear, included allegations of assault, battery, and police brutality—BRPD never told Ms. Reed that Off. Lawrence was investigated *and cleared* of violating BRPD's "Use of BRPD" policy.

40. Off. Lawrence has never apologized to Ms. Reed or any of the civilians he encountered on October 31, 2020 for his misconduct.

## COUNT I

### 42 U.S.C § 1983 – Fourth Amendment Excessive Force

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

As more fully described above, Defendant Troy Lawrence, Jr. deprived Plaintiff Ms. Reed of her constitutional right to be free from excessive force.

9

Defendant Lawrence used excessive force when he first grabbed Ms. Reed by the arms, when he dragged her from the car, and when he forcibly arrested her. The force was excessive to the need (which was none) and was objectively unreasonable.

As a direct and proximate result of this deprivation of her constitutional right to be free from excessive force, Plaintiff suffered injuries, including, but not limited to, significant physical injuries and emotional distress.

## COUNT II

### 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

As more fully described above, Defendant Troy Lawrence, Jr. deprived Ms. Reed of her constitutional right to be free from unreasonable seizures.

Defendant Lawrence arrested Ms. Reed without a warrant and without probable cause to believe she committed a criminal offense.

As a direct and proximate result of this deprivation of her constitutional right to be free from unreasonable seizures, Plaintiff suffered injuries, including, but not limited to, significant physical injuries and emotional distress.

## COUNT III

### 42 U.S.C. § 1983 – First Amendment Retaliation

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

As more fully described above, Defendant Troy Lawrence, Jr. deprived Ms. Reed of her constitutional right to be free from retaliation under the First Amendment to the United States Constitution.

Specifically, Ms. Reed alleges that she was engaged in constitutionally protected activity in (correctly) criticizing Off. Lawrence's misconduct; Off. Lawrence was substantially motivated against the plaintiff's exercise of constitutionally protected conduct when he decided to arrest her because of that criticism; and by arresting Ms. Reed he caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

As a direct and proximate result of this deprivation of her constitutional right to be free from retaliation for First Amendment activity, Plaintiff suffered injuries, including, but not limited to, significant physical injuries and emotional distress.

## COUNT IV

**42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection (Sex Discrimination)**

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

As more fully described above, Defendant Troy Lawrence, Jr. denied Plaintiff Ms. Reed equal protection of the laws on account of her sex in violation of the Fourteenth Amendment to the United States Constitution.

Specifically, Ms. Reed alleges that she was targeted for arrest by Off. Lawrence in substantial part because of her sex. The women in Car 1 and Car 2's encounter with defendant was stamped from the outset by Off. Lawrence's sexism: his frustration at dealing with a call for service involving two groups of women; his indignation at being criticized by a woman (Ms.

Reed); and his gendered criticism of Ms. Reed, a 26-year-old woman ("You must think you are grown").

Finally, in a scene reminiscent of *The Handmaid's Tale* or what we imagine policing might look like under the Taliban, Off. Lawrence released Ms. Reed from handcuffs and allowed her to leave his police car only so that the man he assumed was her father would better "control" her. But-for Ms. Reed's sex (and Off. Lawrence's sexism), Ms. Reed would not have been arrested.

As a direct and proximate result of this deprivation of her constitutional right to equal protection of the laws, Plaintiff suffered injuries, including, but not limited to, significant physical injuries and emotional distress.

## COUNTS V, VI, VII

### State Law Claims – Battery, Assault, False Imprisonment

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

As more fully described above, Plaintiff Ms. Reed asserts state law claims against Off. Lawrence of assault (COUNT V), battery (COUNT VI), and false imprisonment (COUNT VII) in violation of Louisiana law. These claims include all of the previous alleged wrongdoing discussed above, and in addition, Off. Lawrence's verbal threats of physical harm (e.g., "I'ma show you," "Shut the fuck up and go get your motherfucking ass in the car," "Next time I won't be so nice.").

## COUNT VIII

### Municipal Liability ("Ratification") for Counts I and II

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

As more fully described above, Defendants CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE are liable for Off. Lawrence's Fourth Amendment violations because the policymaker (BRPD Chief Murphy Paul) "knowingly approve[d] a subordinate's actions and the improper basis for those actions." *See Covington v. City of Madisonville, Texas*, 812 F. App'x 219, 228 (5th Cir. 2020) (reversing district court's Rule 12(b)(6) improper dismissal of municipal liability claims based on ratification theory).

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants Troy Lawrence, Jr., the Parish of East Baton Rouge, and the City of Baton Rouge. Plaintiff prays for the awarding of declaratory relief and compensatory damages, costs and attorneys' fees against all Defendants, and punitive damages against all Defendants; and for such further and additional relief as this Court may deem appropriate and just. A jury trial is demanded on all issues.

Respectfully submitted,

**SHERMANIE REED**

By: /s/ Thomas W. Frampton
      Her attorney

Thomas W. Frampton
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
(202) 352-8341
*Affiliation for Identification Only*