UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHERMANIE REED** | **DOCKET: 21-CV-624** |
| **V.** | **JUDGE DEGRAVELLES** |
| **TROY LAWRENCE, JR. ET AL** | **MAGISTRATE BOURGEOIS** |

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCLOSURE AND TO COMPEL A DISCOVERY RESPONSE PURSUANT TO RULE 37

**MAY IT PLEASE THE COURT:**

Plaintiff herein, Shermanie Reed, through counsel, has propounded various discovery requests to the defendants. Defendants have produced substantial documentation, including dash and body camera footage of the incident giving rise to her lawsuit, and a variety of reports, including Internal Affairs reports regarding Officer Troy Lawrence Jr. The initial answers to interrogatories and requests for production did not articulate the City's concerns correctly, and so amended answers to interrogatories and requests for production were produced.

As set forth in the Complaint (ECF Doc. 1) and Answer (ECF Doc. 15), the interaction between Officer Lawrence and all parties (Shermanie Reed, her sister who was driving one of the vehicles that got into an accident, her stepfather, and the occupants of the second vehicle) took eleven (11) minutes. Ms. Reed was detained for approximately three (3) minutes. Officer Lawrence used no force, and observed no injuries during the interaction.

The requested discovery is objected to at various points on the basis of officer personal security, relevance, undue burden of production, relevance, lack of proportionality to the needs

of the case, law enforcement privilege, official information privilege, and deliberative process privilege. The information sought appears to be a fishing expedition, and not reasonably calculated to lead to discoverable evidence. While there are only sixteen interrogatories, the definitional section effectively adds multiple subparts to various interrogatories, and counting discrete subparts, there are approximately ninety-three (93) interrogatories and discrete subparts, well in excess of the 25 interrogatory limit imposed by Fed. R. Civ. Pro. 33(a)(1). Plaintiff is not entitled to the materials sought, as set forth herein.

### *SCOPE OF DISCOVERY IN GENERAL*

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). To be relevant, "information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The scope of discovery is not without limits, however, and the court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2).

Although privilege, expressed as a resistance to discovery, is generally disfavored, it is well established that law enforcement has a limited, qualified privilege to resist disclosures relating to ongoing investigations and ongoing criminal litigation. As set forth by the Fifth Circuit in *In Re US Department of Homeland Security*, the accumulated case law protects specific categories of information, such as open criminal investigations, identities of confidential informants, national security, [1] and investigative techniques.[2] Once the privilege is asserted, the trier of fact should make a determination of the applicability of the law enforcement privilege, including by in camera review of documents that the moving party seeks to withhold, and by application of the *Frankenhauser*[3] factors, decide if the materials should be provided, or not, or what other protective measures would adequately safeguard the information. That balancing test uses ten factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
> (2) the impact upon persons who have given information of having their identities disclosed;
> (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
> (4) whether the information sought is factual data or evaluative summary;
> (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
> (6) whether the police investigation has been completed;
> (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
> (8) whether the plaintiff's suit is non-frivolous and brought in good faith;
> (9) whether the information sought is available through other discovery or from other sources;
> (10) the importance of the information sought to the plaintiff's case.
> (*In Re US Dept. of Homeland Sec.*, supra, at 570, citing *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C.Cir.1996))

---

[1] 459 F.3d 565 (US 5th Cir., 8/2/2006) at 569-570, citing *Brown v. Thompson*, 430 F.2d 1214 (5th Cir.1970), *Swanner v. United States*, 406 F.2d 716 (5th Cir.1969), *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir.1991), and the case law of other circuits, at Footnote 1.
[2] Id, at Footnote 2, citing *Black v. Sheraton*, 564 F.2d 531, 545-46 (D.C.Cir.1977) (recognizing, in the context of discussing executive privilege, that law enforcement documents disclosing "investigative techniques or sources" should be minimized.)
[3] *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa. Mar.13, 1973) (unpublished)

The *Frankhauser* test is flexible in its determination, and the privilege is further bound by relevance and time constraints. That is, the privilege applies for a reasonable period of time, and expires thereafter.

Individual officer safety concerns are a recognized area of concern for serving police officers. Likewise, internal affairs investigative reports are disclosed, but redacted, to protect IA informants, to encourage citizens and officers to report perceived misconduct, and to protect the privacy of individuals who have interacted with the police.[4] Applying the *Frankenhauser* factors, internal affairs investigations and their related materials are kept private precisely because disclosure (1) will thwart governmental processes by discouraging citizens from giving the government information, (2) have significant potential impact upon persons who have given information by having their identities disclosed, (3) discourage free and open exchange of information, chilling governmental self-evaluation and consequent program improvements, (4) require disclosure of factual data, (8) the City does not believe this is meritorious litigation, the contact was brief and non-harmful, and (10) the City has disclosed four IA files as to Officer Lawrence, one regarding Shermanie Reed, one where the officer was exonerated after shooting at an aggressive pit bull, and two where the officer got into a dispute with another officer – which has nothing to do with officer to public interaction. The City would concede that factors (5), (6), and (7), cut against the application of the privilege, and that as to factor (9), public records requests are available, but would produce an equally redacted file.

---

[4] See *Amos v. Jackson*, 2006 WL 8460337 (WDLA, 2006) at 1-2, applying *Frankenhauser* factors and determining that in-camera review of IA files would be required to determine discoverability of requested files.  Accord, *Cormier v. Foti,* 2008 WL 4758660 (WDLA, 2008), at 3, "Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation or information which would reveal the identity of confidential informants." (Emphasis added.)

The officers' social security numbers, home address, medical information, and personal telephone numbers are not disclosed, when the balance of the privacy interest or personal nature of information sought against the public interest that would be served by disclosure.[5]

The "official information" privilege is another qualified privilege, one which is invoked by governmental entities to protect otherwise discoverable materials that are usually said, in justification of the privilege, to contain sensitive and confidential governmental information.[6]

The deliberative process privilege is another qualified privilege, invoked to protect high-level decision making processes, as to pre-decision, deliberative communications and documents.[7] This privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[8]

### APPLICATION TO THIS CASE

The amended answers to interrogatories and requests for production of documents where information was limited follow:

> **INTERROGATORY NO. 1:**
> State your name, address, date and place of birth, your present residence address, and any other names or nicknames by which Troy Lawrence Jr. has ever been known.
>
> Defendant objects to this interrogatory on the basis of officer personal security. Troy Anthony Lawrence Jr. can be reached through the Parish Attorney's Office. Officer Lawrence has used no other names or nicknames.

---

[5] See *Walters v. Breaux*, 200 F.R.D. 271 (WDLA, 2001), at 273-275, and authorities cited therein.
[6] See *Clark v. Louisiana*, 2014 WL 5586416 at 1-2, applying *Frankenhauser* factors to determine scope of discovery of prison security records.
[7] *Committee on Oversight and Government Reform of the United States House of Representatives v. Lynch*, 156 F.Supp.3d 101 (DDC, 2016) at 109.
[8] Id, at 109, citing *Espy*, 121 F.3d at 737–38.

As set forth above, this is the kind of personal information that is protected, and irrelevant to the plaintiff's claims. The Officer has a legitimate security and privacy interest, can be contacted through counsel, and his home address adds nothing of value to plaintiff's claims.

> **INTERROGATORY NO. 4:**
> If Troy Lawrence Jr. has received treatment or observation for any mental conditions, alcoholism, narcotic addiction, or disorders of any kind, including any form of anger management counseling or treatment, please give complete details regarding same.
>
> Defendant objects to this request for protected health information.

Similarly to Interrogatory No. 1, this is personal medical information, with no justification and no protection for the officer.

> **INTERROGATORY NO. 13:**
> Please identify all trainings—including the dates, times, places, and personnel involved in such trainings—received by Troy Lawrence Jr. during which training or instruction was provided regarding the First Amendment rights of civilians, disorderly conduct offenses, and/or the use of force.
>
> First Amendment rights, disorderly conduct offenses, and use of force are all taught in the BRPD Basic Academy. Every officer has annual in-service training that includes a use of force refresher segment. Defendant objects to the request for "dates, times, places, and personnel involved in such trainings" as unduly burdensome and not reasonably calculated to lead to relevant or discoverable evidence. Defendants object to this request on the basis of law enforcement privilege (*In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir., 2006)) and/or official information privilege (*Clark v. Louisiana*, 2014 WL 5586416). Subject to and without waiving said objection, see attached training records and personnel file.

> **REQUEST FOR PRODUCTION No. 10**
> All training materials used within the past five (5) years regarding the First Amendment, disorderly conduct offenses, and/or the use of force.
>
> Defendants object to this request. Troy Lawrence, Jr. graduated the BRPD Academy in August, 2019. Records going back to 2017-2018, or records for Academies other than the one Officer Lawrence graduated from, are not relevant to this plaintiff or proportional to the needs of the case. Defendants object to this request on the basis of law enforcement privilege (*In re U.S. Dept. of Homeland*

*Sec.*, 459 F.3d 565 (5th Cir., 2006)) and/or official information privilege (*Clark v. Louisiana*, 2014 WL 5586416).

Interrogatory No. 13 and Request for Production No. 10 are bookends, duplicative, cumulative, and irrelevant. While the plaintiff has alleged a First Amendment claim, she's only had a single interaction with a police officer that she's complaining about. The City provided the 85th Basic Training Academy curriculum, March 18-August 19, 2019, showing sixty-three hours of general legal training, and a variety of coursework that touches on use of force and First Amendment training. While training records are kept, the level of detail demanded is unreasonable, and demand for proprietary training materials is inappropriate, as disclosing defensive tactics and investigative techniques to which one or more privileges apply.

### INTERROGATORY NO. 16:
Please identify all individuals with whom Chief Paul discussed his disciplinary decisions for Troy Lawrence Jr. regarding his misconduct on October 31, 2020.

> Defendant object to this interrogatory to the extent that it requests attorney-client and/or attorney work-product. Defendants object to this request on the basis of law enforcement privilege (*In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir., 2006)), and/or official information privilege (*Clark v. Louisiana*, 2014 WL 5586416), and/or deliberative process privilege (*Committee on Oversight and Government Reform of the United States House of Representatives v. Lynch*, 156 F.Supp.3d 101 (DDC, 2016)). Subject to and without waiving said objection, see attached IA file. Please note that Deputy Chief Troy A. Lawrence, Sr., recuses himself from consideration of discipline for Officer Troy A. Lawrence, Jr.

Interrogatory No. 16 seeks the internal process of the Chief of Police, his deputy chiefs, and sometimes attorneys, in reviewing and determining alleged misconduct. This is privileged, by way of attorney/client and/or work-product privilege, and defendants would suggest that this is the kind of deliberative process that needs protection in order to maintain its effectiveness.

### REQUEST FOR PRODUCTION No. 4
All text messages, emails, communications, or other correspondence sent or received by Troy Lawrence Jr. on October 31, 2020 and November 1, 2020.

>Defendants object to this request on the basis of law enforcement privilege (In re U.S. Dept. of Homeland Sec., 459 F.3d 565 (5th Cir., 2006)) and/or official information privilege (Clark v. Louisiana, 2014 WL 5586416). Defendants further object to this request to the extent that it seeks Officer Lawrence's communications regarding his personal life and cases other than Ms. Reed's, as irrelevant, not reasonably calculated to lead to discoverable evidence, and not proportional to the needs of the case. See attached CAD screens.
>
>**REQUEST FOR PRODUCTION No. 5**
>All body-worn camera video and audio—unredacted and unedited—taken by Troy Lawrence, Jr., on October 31, 2020.
>
>>Defendants object to this request on the basis of law enforcement privilege (*In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir., 2006)) and/or official information privilege (*Clark v. Louisiana*, 2014 WL 5586416). Defendants further object to this request to the extent that it seeks Officer Lawrence's communications regarding his personal life and cases other than Ms. Reed's, as irrelevant, not reasonably calculated to lead to discoverable evidence, and not proportional to the needs of the case.
>
>**REQUEST FOR PRODUCTION No. 6**
>All other video and audio—unredacted and unedited—depicting or taken by Troy Lawrence, Jr., on October 31, 2020 (including any cell phone recordings, recordings from an in-unit recording device, or other radio recordings).
>
>>Defendants object to this request on the basis of law enforcement privilege (*In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir., 2006)) and/or official information privilege (*Clark v. Louisiana*, 2014 WL 5586416). Defendants further object to this request to the extent that it seeks Officer Lawrence's communications regarding his personal life and cases other than Ms. Reed's, as irrelevant, not reasonably calculated to lead to discoverable evidence, and not proportional to the needs of the case.
>>Subject to and without waiving said objection, radio recordings from dispatch to Officer Lawrence have been requested.

Requests for Production No. 4, 5, and 6, are highly intrusive, seeking personal communications by the officer, on his private devices. Defendants further suggest that interactions between the police and the public can be embarrassing, and that complainants in particular have a reasonable expectation of privacy in their communications with police. Defendants have offered to try and produce police radio transmissions (see Request for Production No. 6), and will produce these

official communications. However, recordings of citizens in need of assistance, without any stated justification or relevance, exceeds the scope of reasonable discovery. Finally, all video as to Ms. Reed has already been produced.

> **REQUEST FOR PRODUCTION No. 7**
> All documents (including body-worn camera audio/video and other recordings) related to each incident for which Troy Lawrence Jr. has been investigated for misconduct by BRPD. This includes any complaints, witness statements, audio/video recordings, or any other documents reviewed as part of the disciplinary process.
>
> See attached IA files. Defendants object to the request for body-worn camera audio/video and other recordings related to each incident for which Officer Lawrence has been investigated on the basis of law enforcement privilege (*In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir., 2006)) and/or official information privilege (*Clark v. Louisiana*, 2014 WL 5586416). Providing the requested documents would have a chilling effect on the public's willingness to report alleged misconduct if the public learned that their anonymity was not guaranteed, reproduction of all audio, video, and other recordings is a significant drain on resources, potentially jeopardize current or future Internal Affairs investigations, and/or reveal investigative methods and techniques.

Request for Production No. 7 was responded to by producing IA files that are redacted to remove the identifying information as to informants, complainants, and witnesses. Internal Affairs investigations are another deliberative process – one that needs to be protected, so that officers complaining about other officers, citizens reporting perceived misconduct, and witnesses who may or may not have a reasonable concern about police retaliation, will be forthcoming and truthful about their interaction with the police. Anonymous reporting is at the core of Internal Affairs investigations. Furthermore, though there may be recorded statements or video footage in an IA file, locating, copying, and producing such is not a simple, quick, project. The burden of producing every scrap of electronic evidence from multiple files is unreasonable, and not proportional to the needs of this plaintiff's case.

**REQUEST FOR PRODUCTION No. 9**
All documents related to complaints that BRPD or BRPD employees violated the First Amendment within the past five (5) years.

Defendants object to this request as BRPD's Internal Affairs division does not categorize complaints as First Amendment violations, and a review of all investigations undertaken in the last five years would be unduly burdensome.

Officer Lawrence was sworn in as a commissioned officer in August, 2019. The incident complained of was in October, 2020. Any allegations regarding 2017, 2018, or prior to August, 2019, would have no relevance or bearing on Officer Lawrence. Furthermore, as stated in the answer to the request for production, BRPD's Internal Affairs division does not categorize complaints as First Amendment violations, which means that someone has to review every complaint from the past five years (or three years, if the request was limited to the period when Officer Lawrence started active duty), to see if there's an arguable First Amendment question. By making the question one of First Amendment violations, the person doing the review will almost certainly have to be an attorney, spending dozens of hours looking at each IA file for the last three to five years. By way of example, in 2021, IA received 86 complaints – but not every complaint regarding officer behavior goes to IA. Each of the five districts of BRPD, the Criminal Investigation Bureau, and detective divisions, can handle supervisor-level complaints which do not rise to the level of an IA referral. Those supervisor-level complaints, which might or might not be responsive to the request, are paper files in various physical locations. The burden on the defendants is unreasonable, and not proportional to the needs of this plaintiff's case.

*Conclusion*

The plaintiff has generally made unreasonable demands for discovery, both by number of interrogatories and by the scope of the requests. The City has produced substantial records, but

cannot invade the privacy of the citizens who interact with the police voluntarily or involuntarily, nor will the City jeopardize the integrity of its Internal Affairs process by breaching the anonymity of complainants and witnesses, who do not want their participation in the process to become public. Plaintiff's discovery demands have cast too broad a net, and keeping in mind the brief duration of the interaction between the officer, the actual drivers and passengers of the vehicles involved in the crash, and Ms. Reed, who inserted herself unnecessarily into the situation, the proportionality of the case to the discovery provided has been satisfied.

**By Attorneys:**
**Anderson O. Dotson**
**Parish Attorney**

**/s/ Joseph K. Scott, III**
**Joseph K. Scott, III (#28223)**
**Deelee S. Morris (#28775)**
**A. Gregory Rome (#21062)**
**222 St. Louis Street, 9th Floor**
**Baton Rouge, LA 70802**
**Telephone: (225) 389-3114**
**Facsimile: (225) 389-8736**
**Email: jkscott@brla.gov/**
**joseph@josephksott.com**
**Email: dsmorris@brla.gov**
**Email: grome@brla.gov**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHERMANIE REED** | **DOCKET: 21-CV-624** |
| **V.** | **JUDGE DEGRAVELLES** |
| **TROY LAWRENCE, JR. ET AL** | **MAGISTRATE BOURGEOIS** |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Opposition to Plaintiff's Motion to Compel Disclosure and to Compel a Discovery Response Pursuant to Rule 37* was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

Baton Rouge, Louisiana this 2nd day of August, 2022.

*/s/ Joseph K. Scott, III*
**JOSEPH K. SCOTT, III**